UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEYEDNAVID EMAD et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF STATE et al., <br><br> *Defendants*. | Civil Action No. 23-1789 (TJK) |

**MEMORANDUM OPINION**

Plaintiffs are two Iranian citizens residing in that country whose immigrant visa applications were refused pending further administrative processing. They sue the Department of State and Secretary of State Antony J. Blinken under the Administrative Procedure Act and the Mandamus Act, alleging that they have waited too long for an adjudication of their applications. Defendants move to dismiss for lack of jurisdiction and for failure to state a claim. The Court lacks subject-matter jurisdiction over the Secretary of State and will dismiss him for that reason. As for the Department of State, the Court finds that Plaintiffs' allegations fail to state a claim for unreasonable delay. Thus, the Court will grant the motion and dismiss the case.

**I.     Background**

United States citizens who wish to bring their foreign national relatives to the United States must file a Petition for Alien Relative (Form I-130) with the United States Citizenship and Immigration Services ("USCIS"). *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1). Upon approval of the petition, USCIS sends the application to the State Department's processing center. *See* 8 C.F.R. § 204.2(a)(3). The foreign relative then submits another application (Form DS-260) and appears for an interview at the embassy with jurisdiction over the foreign relative's residence. *See* 22

C.F.R. § 42.62.  After the interview, "the consular office must issue the visa [or] refuse the visa." *Id.* § 42.81(a).

According to the Complaint, in November 2014, Rezvan Goodarzi, a U.S. permanent resident, filed an I-130 Petition, listing her son, Plaintiff Seyednavid Emad, as the beneficiary. ECF No. 1 ("Compl.") ¶ 10.  Emad is an Iranian citizen.  *Id.* ¶ 9.  After approval by the USCIS on October 31, 2019, Emad submitted an immigrant visa application under 8 U.S.C. § 1202(b).  *Id.* ¶ 12.  Emad completed an interview at the United States Embassy in Yerevan, Armenia on February 13, 2023.  *Id.* ¶ 13.

In August 2020, U.S. citizen Seyedehdarya Safavinia filed an I-130 listing her husband, Iranian citizen Mohammadjavad Taghvaeiyazdeli, as the beneficiary.  Compl. ¶ 24. Taghvaeiyazdeli submitted his immigrant visa application on August 9, 2021, *id.* ¶ 26, and completed an interview at the United States Embassy in Yerevan on January 19, 2023, *id.* ¶ 27.

After their interviews, both Plaintiffs received a notice informing them that their applications had been refused for administrative processing and that they would receive a questionnaire requesting more information.  Compl. ¶¶ 14, 28.  Both Plaintiffs sufficiently responded to the questionnaires, and their applications are currently "refused for administrative processing" without further explanation.  *Id.* ¶¶ 16–17, 21, 30–32.  Plaintiffs filed suit in June 2023, invoking the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Mandamus Act, 28 U.S.C. § 1361.  *See generally id.*  Defendants now move to dismiss for both lack of subject-matter jurisdiction and for failure to state a claim.

**II.     Legal Standard**

To survive a Rule 12(b)(1) motion to dismiss, a plaintiff must establish the Court's subject matter jurisdiction.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  When evaluating a Rule

2

12(b)(1) motion, the Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged,' . . . and upon such facts determine[s] jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Without subject-matter jurisdiction over a claim, the Court must dismiss it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). But a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**III.    Analysis**

Although the Court finds that it lacks subject-matter jurisdiction over Plaintiffs' claims of unreasonable delay against the Secretary of State, it does have jurisdiction over the claims against the State Department. Even so, Plaintiffs have failed to state a claim for unreasonable delay. So while Defendants raise several other non-jurisdictional arguments for dismissal in their motion, the Court need not address them. *See, e.g.*, *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168 n.6

3

(D.D.C. 2021) (declining to address consular nonreviewability and other arguments in unreasonable delay case after examining *TRAC* factors).

  **A.** **Plaintiffs Lack Standing to Sue the Secretary of State**

Under Article III of the Constitution, federal courts "may only adjudicate actual, ongoing controversies," *Honig v. Doe*, 484 U.S. 305, 317 (1988), of which "the core component of standing is an essential and unchanging part," *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing "is not dispensed in gross." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (internal quotation marks omitted). That is, standing "must be demonstrated for each claim against each defendant." *Whitlock v. U.S. Dep't of Homeland Sec.*, No. 21-cv-807 (DLF), 2022 WL 424983, at *4 (D.D.C. Feb. 11, 2022).

Defendants argue that Plaintiffs lack standing because they "seek to compel action on the specific Visa Applications, which is the exclusive province of a U.S. consulate." ECF No. 5 at 12. The Court agrees with respect to the Secretary of State. As noted above, to establish standing as to a defendant, Plaintiffs must show that their injuries are "causal[ly] connect[ed]" to each defendant's conduct and "likely" can be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. Plaintiffs lack standing to sue the Secretary because they have failed to establish the causation and redressability prongs against him.

The Secretary of State's role in the visa-adjudication process has been circumscribed by statute. As the D.C. Circuit has held, the Immigration and Nationality Act ("INA") "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Nusrat v. Blinken*, No. 21-cv-2801

(TJK), 2022 WL 4103860, at *4 (D.D.C. Sept. 8, 2022) (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) and *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  "Because only the consular offices, and not the Department of State, can grant [Plaintiff's] application[] . . . [he] cannot show that his injury is redressable by the Department of State Officials." *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 75 (D.D.C. 2022).

Plaintiffs argue that the Secretary can redress their injuries because "[w]hile consular officers possess exclusive authority over visa adjudications, this authority does not extend to causing unjustified delays or failing to take action when a duty is clear." ECF No. 6 at 6.  Other courts in this district have adopted that argument.  *See, e.g.*, *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (finding standing as to the Secretary of State because the Secretary has "control over the *timing* by which the consular officer considers the applications presented to her"); *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *3 (D.D.C. Feb. 15, 2024) (same).  Those decisions emphasize that in *Baan Rao* and *Saavedra Bruno*, the D.C. Circuit only said that the Secretary is precluded from controlling the "determinations" of consular officers, and that controlling the timing of visa adjudications is different from controlling the determinations of the adjudication.  *See Al-Gharawy*, 617 F. Supp. 3d at 10.

To be sure, neither *Baan Rao* nor *Saavedra Bruno* directly held that the Secretary is precluded from directing consular officers to decide pending applications within a specific time.  But that question was not at issue in those cases.  Focusing on the statutory text, however, the Secretary is expressly precluded from "those powers, duties, and functions . . . *relating to* the granting or refusal of visas," which would include administrative guidance for the pace of adjudicating visas or completing administrative processing.  8 U.S.C. § 1104(a) (emphasis added).

Thus, the Secretary of State's ability to redress their alleged injuries has been circumscribed by statute.

Plaintiffs also suggest that the Secretary of State has a general oversight role and is "responsible for setting policies, procedures, and guidelines for visa processing and adjudication." ECF No. 6 at 6.  But as Defendants correctly note, Plaintiffs here are not challenging any specific Department rule, policy, practice, regulation, procedure, or guideline.  Instead, they seek declaratory relief that the Secretary has unreasonably delayed the adjudication of their specific visa applications, and they request an order requiring the Secretary to complete the adjudication. The Secretary has no role to play in that process.  *See Siddiqui*, 646 F. Supp. 3d at 75 (D.D.C. 2022) ("[B]ecause [Plaintiff] does not challenge any policy or regulation of the Department, [Plaintiff] cannot show that his injury is redressable by the Department of State officials.").  Thus, the authority to redress Plaintiffs' specific claims in this lawsuit lies exclusively with consular officials, not the Secretary.  Thus, the Court lacks subject-matter jurisdiction over the Secretary of State and must dismiss him as a defendant.

This analysis, however, does not extend to the State Department.  Both APA and mandamus relief may be sought directly against an agency responsible for carrying out a statutory duty.  *See Khoshnevisan v. United States Dep't of State,* No. 23-cv-3580 (TNM), 2024 WL 3010848, at *1 n.1 (D.D.C. June 14, 2024) (citing *In re Ctr. for Bio. Div.*, 53 F.4th 665, 670 (D.C. Cir. 2022)); 5 U.S.C. § 706(a) ("The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.").[1]  Although the statutory authority to review applications is

---

[1] While the APA contemplates relief against an agency, it also requires "[t]hat any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance."  5 U.S.C. § 702.  Plaintiffs request both preliminary and permanent injunctive relief.  ECF No. 1 at 12.  But whether Plaintiffs' failure to name a specific federal officer who is personally responsible for compliance would

6

exclusively granted to consular officers, those officers are ultimately State Department officials. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 335 (D.C. Cir. 2023) ("[T]he State Department tracks visa availability, allocates visas, and, for visa-seekers residing outside the United States, issues visas through its embassies and consulates worldwide to persons USCIS determines to be eligible."); *see also Sedaghatdoust v. Blinken*, No. 23-cv-3218 (TNM), 2024 WL 2383228, at *2 (D.D.C. May 23, 2024) (explaining how Congress delegated to the State Department the responsibility of defining "consular officers," and the Department, in turn, defined it to include the Deputy Assistant Secretary for Visa Services, along with her delegees at the State Department).  Thus, even though Congress has circumscribed the Secretary of State's role in the visa adjudication process, it is still carried out by officials within the State Department.  Indeed, other Courts in this jurisdiction have allowed similar suits to proceed against the State Department as the lone defendant after dismissing other officials—including the Secretary of State—from the action for lack of standing.  *See Sadeghi v. Dep't of State*, No. 24-cv-449 (TNM), 2024 WL 3338854, at *1 n.1 (D.D.C. July 9, 2024); *Yazdanpanahderav v. Dep't of State*, No. 23-cv-3688 (ACR), 2024 WL 3010874, at *3 (D.D.C. June 14, 2024).  Thus, the Court finds that Plaintiffs have standing to sue the State Department.[2]

---

prevent the Court from granting injunctive relief under the APA is a merits question, not a jurisdictional issue.  And because the Court finds that Plaintiffs have otherwise failed to state a claim for relief, it need not address whether they would have a right to injunctive relief under the APA.

[2] Defendants claim that a suit against the Secretary of State and a suit against the State Department "effectively are one and the same," suggesting that because there is no subject-matter with respect to the Secretary there should be no subject-matter jurisdiction as to the State Department as well.  ECF No. 7 at 6.  And it is true that the Supreme Court has held that suing an officer "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  But the Supreme Court there was merely distinguishing a suit against an official in his personal capacity as compared to

### B.     Plaintiffs Have Failed to State a Claim for Unreasonable Delay Under the APA or the Mandamus Act

Plaintiffs bring their unreasonable delay claims under § 706(1) of the APA and the Mandamus Act. The Court applies the same legal standard to both claims. *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017). In essence, the Court must determine "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.* 531 F.3d 849, 855 (D.C. Cir. 2008) (citation omitted).

To help guide this inquiry, the D.C. Circuit has laid out a six-factor test:

(1) the time agencies take to make decisions must be governed by a "rule of reason";

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. and Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (cleaned up); *see also Da Costa*, 80 F.4th at 340 ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors."). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). Courts often address the factors by addressing

---

an official-capacity suit. Defendants cite no case holding that a suit against an agency is always the functional equivalent of a suit against that agency's head.

them under "four basic inquiries." *Rashidi v. U.S. Dep't of State*, No. 23-cv-1569 (JEB), 2023 WL 6460030, at *4 (D.D.C. Oct. 4, 2023).

> "First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)?  Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)?  Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)?  Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?"

*Rahman v. Blinken*, No. 22-cv-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023) (cleaned up).

In this case, taken together, the *TRAC* factors weigh strongly in the State Department's favor.  Thus, even accepting Plaintiffs' allegations as true, they do not state a claim for unreasonable delay under this Circuit's precedents and the case must be dismissed.

    **1.**    ***TRAC* Factors 1 and 2**

The first two *TRAC* factors are typically considered together. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  And the first is often considered the "most important." *In re Core Commc'ns, Inc.*, 531 F.3d at 855.  The Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

These first two factors, taken together, strongly favor the State Department.  Plaintiffs argue that the State Department's delay in adjudication is unreasonable and that a clear "rule of reason" exists under 5 U.S.C. § 555(b), requiring an agency to conclude a matter "within a reasonable time."  Compl. ¶ 46.  But "[t]here is no congressionally imposed timeline" for the embassy to adjudicate a visa application. *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020).  "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka*, 246 F. Supp. 3d at 153–54.  Thus, lacking a "set timeline, the

Court looks to case law for guidance." *Dastagir*, 557 F. Supp. 3d at 165. In *Da Costa*, the D.C. Circuit found a four-and-a-half-year delay not unreasonable. 80 F.4th at 342. For their part, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Lee*, 2024 WL 639635, at *5 (quoting *Rahman*, 2023 WL 196428, at *4). Indeed, "[c]ourts in this District consistently have held that two or three years does not constitute an unreasonable delay." *Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) (collecting cases).[3]

Plaintiffs sued in June 2023, about four months after Emad's visa application was "refused for administrative processing," and five months after Taghvaeiyazdeli's application was refused for the same. Thus, at this point they have waited about sixteen and fifteen months, respectively.[4] Simply put, that delay does not approach "unreasonable" under the relevant case law. *See Da Costa*, 80 F.4th at 339–340, 342 (noting that while "undoubtedly maddening," a four-and-a-half-

---

[3] Plaintiffs in other cases (although not this one) have pointed out that Congress has expressed its sense that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). But "a sense of Congress resolution is not law." *Emergency Coal. to Def. Educ. Travel v. Dep't of Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008). At most, Congress's "aspirational statement" only slightly tilts the second TRAC factor in Plaintiffs' favor. *Da Costa*, 80 F.4th at 344 ("This factor somewhat favors Plaintiffs, as they have waited longer than 180 days."). It does no more than that because the "delay has not reached the level of disproportionality [courts] have previously held sufficient to grant relief." *Id*.

[4] Plaintiffs note that, as of the time they filed suit, Defendants had received Emad's visa application over three-and-a-half years earlier and Taghvaeiyazdeli's almost two years earlier. *See* Compl. ¶ 40. But "[c]ourts in this District routinely analyze delay claims based on the date of placement in administrative processing, not the date that plaintiffs filed their application." *Sharifymoghaddam v. Blinken*, No. 23-cv-1472 (RCL), 2024 WL 939991, at *5 n.4 (D.D.C. Mar. 5, 2024) (declining to measure delay from the date that plaintiffs submitted their initial I-140 petition); *see also Nusrat*, 2022 WL 4103860, at *6 n.6 (explaining that courts "measure the period of delay from the last government action to the issuance of the opinion").

year delay was "not sufficient to show that USCIS does not follow a rule of reason in processing" the visa applications at issue).

### 2. *TRAC* Factor 4

The fourth *TRAC* factor considers the effect of expedition on an agency's competing priorities. *TRAC*, 750 F.2d at 80. This factor often favors the agency and "carries the greatest weight in many cases." *Milligan*, 502 F. Supp. 3d at 319. In fact, so substantial is its weight that "[t]his Circuit has refused to grant relief" based on the fourth factor "even [when] all the other factors considered in *TRAC* favored it." *Id.* (cleaned up). That is so because courts "are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space.'" *Lee*, 2024 WL 639635, at *6 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)). In other words, granting expedited agency action is inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants'" with "'no net gain'" in adjudications achieved. *Da Costa*, 80 F.4th at 343–44 (quoting *Burwell*, 812 F.3d at 192, and *In re Barr Lab'ys, Inc.*, 930 F.2d at 75).

In this case, Plaintiffs "ask[] for just that." *Dastagir*, 557 F. Supp. 3d at 167. They seek to compel the State Department to "promptly adjudicate" their visa applications. Compl. at 13. But because consular "processing capacity is presently a zero-sum game," *Murway v. Blinken*, No. 21-cv-1618 (RJL), 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022) (cleaned up), their requested relief would amount to a "judicial reordering[] of agency priorities," *Rahman*, 2023 WL 196428, at *4. In other words, Plaintiffs seek to cut to the front of the line. *Cf. Dastagir*, 557 F. Supp. 3d at 169 ("Dastagir offers no basis for judicial line-cutting those also waiting their turn."). Ordering the State Department to immediately schedule visa interviews for Plaintiffs and adjudicate their

visas is "the very type of agency action . . . that if compelled would presumably delay other adjudications." *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (citing *Skalka*, 246 F. Supp. 3d at 154). And even though "the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021). Thus, the fourth *TRAC* factor strongly supports the State Department.

### 3. *TRAC* Factors 3 and 5

Factors three and five involve "the interests prejudiced by delay," including possible effects on "human health and welfare." *TRAC*, 750 F.2d at 80; *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (considering the third and fifth factors in tandem). Emad has been separated from his mother in the United States for about ten years, has no other immediate family members in Iran, and has been diagnosed with anxiety disorder, major depressive disorder, and insomnia. Compl. ¶ 18. And the delay has caused both Emad and his mother to "remain in legal limbo as to whether they are able to start their lives together as a family in the United States." *Id.* ¶ 22. Similarly, Taghvaeiyazdeli and his wife have also suffered "significant, ongoing harm" because they also remain uncertain as to whether they can start their lives together as husband and wife in the United States. *Id.* ¶ 33. The Court is sympathetic to the unfortunate circumstances of both Plaintiffs. But "[w]hile the Court does not doubt that [Plaintiffs] ha[ve] an interest in prompt adjudication, so too do many others facing similar circumstances." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021). And to the extent these *TRAC* factors weigh in Plaintiffs' favor, it is clear "[t]hey do not 'overcome the other factors that weigh strongly in the Government's favor.'" *Dastagir*, 557 F. Supp. 3d at 168 (citation omitted).

### 4. *TRAC* Factor 6

12

The sixth *TRAC* factor, which provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" *TRAC*, 750 F.2d at 80, is neutral. Although Plaintiffs allege an unreasonable delay and decry their lack of information about the reasons for that delay, they cite no specific evidence of bad faith or impropriety.

\* \* \*

The Court takes notice of the "troubling backlog of petitions waiting for . . . adjudication." *Da Costa*, 80 F.4th at 344. But after weighing the *TRAC* factors, the Court finds that Plaintiffs have not stated a claim that the adjudication of their visa application has been unreasonably delayed. In fact—unfortunately—their wait time "pales in comparison to the longer delays other applicants have unsuccessfully challenged in this district." *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 169 (D.D.C. 2021). In the end, delays "stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities." *Milligan*, 502 F. Supp. 3d at 319 (cleaned up). And they offer no reason for the Court to bump them to the front of the line.

**IV.    Conclusion**

For all these reasons, the Court will grant Defendants' motion and dismiss the case. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 23, 2024